# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Case No.: 23-CR-35 (RC) |
| v. | 18 U.S.C. § 231(a)(3) |
| **BENJAMIN SILVA,** | |
| Defendant. | |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Benjamin Silva, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public. The grounds around the Capitol were posted and cordoned off, and the entire area as well as the Capitol building itself were restricted as that term is used in Title 18, United States Code, Section 1752 due to the fact that the Vice President and the immediate family of the Vice President, among others, would be visiting the Capitol complex that day.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside. By shortly after 1:00 PM, the situation at the Capitol had become a civil disorder as that term is used in Title 18, United States Code, Section 231, and throughout the rest of the afternoon the civil disorder obstructed the USCP's ability to perform their federally protected function to protect the U.S. Capitol building and its occupants.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the Metropolitan Police Department ("MPD") were called to assist officers of the USCP who were then engaged in the performance of their official duties.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP and

MPD attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.8 million dollars for repairs.

7.   Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

8.   The attack at the U.S. Capitol adversely affected the United States Secret Service, which was protecting Vice President Michael Pence, and the United States Capitol Police's protection of the Capitol and its occupants.

9.   It also affected commerce within the District of Columbia. For example, it affected the sales of Safeway grocery stores within the District of Columbia, whose products also travel in interstate commerce before being sold in the District.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

10. On January 6, 2021, beginning at approximately 2:42 p.m., numerous members of the mob attacked members of the USCP and MPD who were lawfully engaged in the performance of their official duties defending an entrance to the U.S. Capitol on the Lower West Terrace known as "the tunnel." Over the course of more than two hours, members of the mob threw items at police, struck police with items, sprayed police with chemical irritants, pushed against the police and stole items from the police defending the tunnel.

11. At approximately 2:56 p.m., the defendant, Benjamin Silva, entered the tunnel where many members of the mob were fighting against the police. Silva made his way through the crowd in the tunnel and toward the police line.

12. At approximately 3:04 p.m., the defendant assisted the crowd in confronting the police officers that were preventing the tunnel and the Capitol from being breached. Specifically, Silva added his force, momentum, body, and efforts to the other rioters in a "heave-ho" effort. This put aggregate pressure on the police line in front of the rioters.

13. By approximately 3:05 p.m., while he was inside the tunnel, Silva was at the front of the mob of rioters, where he leaned into the line of officers, with his hand up on the riot shield of an officer. After reaching the police line, Silva spoke with a police officer while an individual behind Silva sprayed the line of officers with a chemical irritant. At one point, a police officer put his hand on Silva's forearm/wrist area in an effort to push Silva back, as Silva continued to push toward the police line. Even when other rioters were leaving the tunnel, Silva fought to stay in the tunnel and to press forward against the police line in a concerted effort with other rioters doing the same.

14. While near the police line, Silva stood near the location of a "shield wall" that had been made by other rioters using multiple stolen U.S. Capitol Police riot shields to push against the police line.

15. By approximately 3:07 p.m., Silva had been sprayed with a chemical irritant in the eyes and began to make his way out of the tunnel.

### *Elements of the Offense*

16. The parties agree that obstructing law enforcement officers during a civil disorder, in violation of 18 U.S.C. §231(a)(3), requires the following elements:

   a. The defendant knowingly committed or attempted to commit an act with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers.

   b. At the time of the defendant's act, the law enforcement officer or officers were engaged in the lawful performance of their official duties incident to and during a civil disorder.

   c. The civil disorder in any way or degree obstructed, delayed, or adversely affected commerce or the movement of any article or commodity in commerce, or the conduct or performance of any federally protected function.

### *Defendant's Acknowledgments*

17. The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that:

   a. He committed or attempted to commit an act to obstruct, impede, or interfere with USCP and MPD officers who were lawfully engaged in the performance of their official duties incident to and during the commission of a civil disorder.

b. The civil disorder obstructed, delayed, or adversely affected commerce or the movement of any article or commodity in commerce, including the sales of Safeway grocery stores within the District of Columbia, whose products travel in interstate commerce before being sold in the District, and the performance of any federally protected function, including the U.S. Secret Service's protection of the Vice President.

c. He forcibly assaulted, resisted, opposed, intimidated, impeded, and interfered with members of the MPD and USCP who were engaged in the performance of their official duties.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: /s/ Holly F. Grosshans
HOLLY F. GROSSHANS
Assistant United States Attorney
D.C. Bar No. 90000361
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
Phone: (202) 252-6737
Email: Holly.Grosshans@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Benjamin Silva, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 11/30/23

Benjamin Silva
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 11/30/23

Burke Wonnell
Attorney for Defendant